IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHERRIE L.,

        Plaintiff,

   v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Civil Action 2:21-cv-4010
Judge Edmund A. Sargus
Magistrate Judge Jolson

## REPORT AND RECOMMENDATION

Plaintiff, Sherrie L., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

On April 4, 2018, Plaintiff protectively filed an application for DIB alleging disability beginning February 2, 2018, due to bipolar disorder, depression, anxiety, inability to lift more than 30 pounds, carpal tunnel syndrome, arthritis, and vertigo. (Tr. 194–95, 232). After her application was denied both initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on September 10, 2020. (Tr. 38–65). The ALJ denied Plaintiff's application in a written decision on September 30, 2020. (Tr. 13–35). When the Appeals Council denied review, that denial became the final decision of the Commissioner. (Tr. 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on July 26, 2021 (Doc. 1), and the Commissioner filed the administrative record on September 24, 2021 (Doc. 6). The matter has been briefed and is ripe for consideration. (Docs. 7, 8, 13).

### A. Relevant Hearing Testimony

The ALJ summarized the testimony from Plaintiff's hearing and statements to the agency:

> In her Adult Function Report, [Plaintiff] indicated that she does not need special reminders to take care of her personal needs. However, she stated that she needs to do things at times and just puts it off. She also reported that she needs reminders for her morning medication (Exhibit 6E, p. 3).*** [Plaintiff] indicated that she spends time with others, checks Facebook, checks Twitter, and visits with a friend. She stated that she is on social medial daily and visits with others every two weeks. She also reported that she regularly goes to the library and attends family functions or events when necessary (Exhibit 6E, p. 5).*** [Plaintiff] indicated that her ability to pay attention varies. She noted that she can lose focus during a conservation. She also reported that she does not finish what she starts (Exhibit 6E, p. 6). *** [Plaintiff] documented that her daily activities depend on what kind of day she is having. She stated that she typically has coffee, watches the news, and makes herself do housework. She also noted that she tries to read or take a nap (Exhibit 6E, p. 2)

(Tr. 21–22).

> At the hearing, [Plaintiff] stated that her carpal tunnel syndrome makes it difficult for her to write legibly. [Plaintiff] also stated that her fingertips are numb most of the time, so it makes it difficult for her to grip items and button a shirt. In terms of treatment, she stated that she wears braces on her wrists at night. However, she stated that she has not had surgery. As to mental health, [Plaintiff] stated that she has depression and anxiety, which makes her irritable at times. She also stated that she has difficulty with focus and concentration and worries a lot about going out or being around others. In terms of treatment, she stated that she is prescribed medication that helps some. However, she also stated that she does not get a full night of sleep on a regular basis. She stated that she naps during the day for up to two hours.

(Tr. 23–24).

### B. Relevant Medical Evidence

The ALJ also usefully summarized Plaintiff's medical records and symptoms related to her physical impairments:

In terms of the objective physical evidence, records from the Holzer Clinic documented that [Plaintiff] has a history of pain in the right wrist. She reported that in mid 2017, her thumb began clicking and then her wrist started hurting (Exhibit 1F, p. 54). X-rays from June 2017 showed evidence of mild osteoarthritic changes at the first carpal metacarpal joint and radiocarpal joint. However, there was no evidence of fracture seen (Exhibit 1F, p 13). [Plaintiff] also complained of carpal tunnel and trigger finger of the long finger (Exhibit 1F, p. 54). During a physical exam in June 2017, [Plaintiff] had no muscle atrophy, asymmetry, or swelling in the wrist despite her complaints of pain (Exhibit 1F, p. 57). In addition, an EMG/NCS documented that she had moderate bilateral carpal tunnel syndrome with the right wrist slightly worse than the left (Exhibit 1F, p. 80). However, she was treated conservatively with braces and has not had surgery (Exhibit 1F, p. 54).

In June 2018, [Plaintiff] was evaluated by Philip Swedberg, M.D. At the evaluation, [Plaintiff] alleged that she is unable to work as she has carpal tunnel syndrome in both hands, which she believes is from lifting heavy boxes while working in a produce department of a supermarket (Exhibit 5F, p. 1). According to the records, [Plaintiff] was treated with wrist splints and has not had surgery. [Plaintiff] reported that the splints improved her pain. However, she alleged that holding objects for prolong periods is painful. She also reported numbness in the thumb and a "tingling tightness in the forearm (Exhibit 5F, p. 1). On examination, forward flexion of the extended arms and abduction of the extended arms in a sideways arc in the coronal plane of the body were normal to 180 degrees. Muscle and grasp strength were well preserved over the upper extremities as was pinprick and light touch sensation. Manipulative ability was normal bilaterally, and there was no evidence of muscle atrophy. However, [Plaintiff] had positive Tinel and Phalen signs (Exhibit 5F, p. 2). In conclusion, Dr. Swedberg stated that while [Plaintiff] had a positive Tinel and Phalen signs, there were no other significant findings and the remainder of the orthopedic examination of both the upper and lower extremities was entirely normal. However, he also documented that [Plaintiff] was obese (Exhibit 5F, p. 3).

In addition to the aforementioned, records from SOMC Medical Care Foundation, Inc. documented that [Plaintiff] was newly diagnosed with diabetes in October 2019. However, it was noted to be without complications (Exhibits 7F, p. 18 and 8F, p. 10). *** In terms of diagnostic studies, an EMG/NCS documented that [Plaintiff] had moderate bilateral carpal tunnel syndrome (Exhibit 1F, p. 80). However, x-rays from June 2017 showed evidence of only mild osteoarthritic changes at the first carpal metacarpal joint and radiocarpal joint (Exhibit 1F, p 13). In addition, during a physical exam in June 2017, [Plaintiff] had no muscle atrophy, asymmetry, or swelling in the wrist despite her complaints of pain (Exhibit 1F, p. 57). Her treatment was also conservative and consisted of braces and wrist splints (Exhibits 1F, p. 54 and 5F, p. 1). Finally, the undersigned notes that while Dr. Swedberg found that [Plaintiff] had positive Tinel and Phalen signs during her consultative examination, there were no other findings and the remainder of the orthopedic examination of both the upper and lower extremities was entirely normal. As to other impairments, records from SOMC and Dr. Swedberg

3

> documented that [Plaintiff] had diabetes mellitus and obesity. However, her diabetes was noted to be without complications, and there was no evidence in the record showing that [Plaintiff]'s obesity limited her ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule (Exhibits 5F, p. 3, 7F, p. 18, and 8F, p. 10). [ ].

(Tr. 24–25).

The ALJ also usefully summarized Plaintiff's medical records and symptoms related to her mental impairments:

> As to mental health, records from Holzer Clinic documented that [Plaintiff] has a history of depression, with fluctuating moods. Records from 2017 noted that she was taking medication, but she felt as if it was not really helping (Exhibit 1F, p. 17). In March 2018, she noted that [s]he was not sleeping and had anhedonia. However, she denied suicidal or homicidal ideation (Exhibit 1F, p. 17). In terms of treatment, the records noted that she was prescribed medications such as Quetiapine and Venafaxine (Exhibit 1F, p. 18).
>
> On May 29, 2018, [Plaintiff] had a consultative examination with Alice Wang, Psy.D. During the evaluation, [Plaintiff] reported that she has a history of depression with associated lack of focus and anxiety (Exhibit 3F, p. 2). She reported that she was prescribed medication such as Quetiapine, Venlafaxine, and Escitalopram. However, she denied any history of psychotherapy or psychiatric hospitalization (Exhibit 3F, p. 3). On examination, she displayed adequate eye contact and showed no signs of hostility or aggressiveness (Exhibit 3F, p. 4). However, she appeared nervous. Nonetheless, her concentration and persistence appeared satisfactory, and she was able to remain on task at work at an adequate pace during the evaluation. Her remote recall was adequate, and she successfully executed serial 3s from 20 backwards. She remembered what she did before she came to the appointment and recalled the last five presidents (Exhibit 3F, p. 5). In conclusion, Dr. Wang diagnosed [Plaintiff] with an unspecified depressive disorder. She noted that [Plaintiff] did not show any significant inconsistency in her reported information across the interview. She did not report unusual symptoms and did not appear to exaggerate or minimize her difficulties. She was also found to be of average intelligence (Exhibit 3F, p. 5).
>
> Progress notes from SOMC documented that [Plaintiff] was taking her medication as prescribed but had some side effects, such as difficulty with concentration (Exhibit 6F, p. 3). During an examination in September 2018, [Plaintiff] reported that she abused alcohol in the past and continues to use alcohol against her practitioner's advice. She reported that she has about three drinks per night when she cannot sleep but was told not to mix alcohol with her medication (Exhibit 6F, p. 9). On exam, her mood and affect were depressed and anxious. [Plaintiff] also noted a reduced rate of thought processes. However, her judgment and insight were

> intact. [Plaintiff] also reported no delusions or suicidal ideations (Exhibit 6F, p. 5). The records noted that [Plaintiff]'s medications were adjusted based on her complaints (Exhibit 6F, p. 5). In late September, [Plaintiff] reported that she was still experiencing trouble leaving her house at times. However, she indicated that she went to a library book sale and to an Apple Festival and had a good time. She also reported that she watched an entire football game and cooked dinner with her husband (Exhibit 6F, p. 13). At the time, she had psychotherapy and actively participated in the formulation of her treatment plan (Exhibit 6F, p. 14). In early October 2018, [Plaintiff] reported that she was feeling okay. She noted that progressive muscle relaxation really helped. She was also making a schedule to structure her day and was getting things accomplished (Exhibit 6F, p. 15).
>
> By late October 2018, [Plaintiff] noted that she felt better. Her thought processes were also intact (Exhibit 7F, p. 8). Over the next year, [Plaintiff] reported ups and downs with her mood. In July 2019, [Plaintiff] reported that she was taking medication as prescribed. She also denied suspected drug side effects (Exhibit 7F, p. 14). However, in December 2019, she noted that she felt worse as her sleep schedule was off (Exhibit 7F, p. 22).
>
> *** [P]rogress notes from SOMC documented while she reported difficulty with leaving her house at times, she also reported that she was able to do things such as attend a library book sale and an Apple Festival (Exhibit 6F, p. 13). She also actively participated in the formulation of her treatment plan and noted that progressive muscle relaxation really helped her (Exhibit 6F, pp. 14 and 15). Finally, the undersigned notes that the mental status exam during [Plaintiff]'s psychological consultative examination was within normal limits overall. She denied any history of psychotherapy or psychiatric hospitalization and displayed adequate eye contact during her exam (Exhibit 3F, pp. 3 and 4). In addition, she did not show any significant inconsistency in her reported information across the interview and was found to be of average intelligence (Exhibit 3F, p. 5).

(Tr. 25–26).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through December 31, 2022, and has not engaged in substantial gainful employment since her alleged onset date of November 29, 2017. (Tr. 19). The ALJ determined that Plaintiff has the following severe impairments: depressive disorder, psychological insomnia, anxiety disorder, alcohol use, obesity, diabetes, right wrist/hand osteoarthritis, and bilateral carpal tunnel syndrome. (*Id.*). Still, the ALJ found that none of Plaintiff's impairments, either singly or in combination, meet or medically equal

a listed impairment. (Tr. 20).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently operate hand controls bilaterally. She can frequently handle, finger, and feel items bilaterally. She can occasionally climb ramps and stairs; but can never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, and kneel. She can occasionally crouch and crawl. She should never work at unprotected heights or around heavy or hazardous machinery. She can frequently operate a motor vehicle, except there should be no driving at nighttime. She can frequently work in vibration. In addition, she must work in a low-stress work environment defined as one having no greater than occasional changes in the work setting and no fast-paced production requirements.

(Tr. 23).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence." (Tr. 24).

The ALJ weighed the medical source opinions as follows:

> The [ALJ] finds that the State agency consultants' physical and mental health assessments are persuasive, as the mental health portion comports with the many good mental status examinations contained in the record, including the consultative exam, versus [Plaintiff]'s extreme reporting of anxiety. The undersigned also notes that while the evidence of record supports a finding of a light exertional level of activity, given her mild osteoarthritis, carpal tunnel syndrome, obesity, and mental health conditions discussed above, the undersigned increased postural and environmental limitations.
>
> The [ALJ] finds that the opinion in Exhibit 11F [Cindy Hammond, APRN from Southern Ohio Medical Center Psychiatric Associates] indicating that [Plaintiff] has marked or extreme findings in all of the mental health domains is not persuasive, as it is not supported by the many relatively benign mental status exam in the record, including the consultative examination by Dr. Wang (Exhibits 3F and 6F).
>
> The [ALJ] finds that the opinion of Dr. Wang in Exhibit 3F is persuasive as it comports with her evaluation findings and other generally good mental status exams in the record (Exhibits 3F and 6F, pp. 11 and 15).

(Tr. 27).

Relying on the vocational expert's testimony, the ALJ determined that Plaintiff was capable of performing her past relevant work. (Tr. 27). He therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time since November 29, 2017. (Tr. 28–29).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

Plaintiff raises two assignments of error. She first alleges the ALJ erred at step four of the sequential evaluation process by determining that Plaintiff could return to her past relevant work as a greeter. (Doc. 7 at 7–10). Plaintiff next alleges that 42 U.S.C. § 902(a)(3), which limits the President of the United States' power to remove the Commissioner of Social Security without cause, violates the separation of powers doctrine, and thus, the Commissioner's delegation of power to the ALJ who adjudicated her claim was defective. (*Id.* at 11–15).

7

### A. Past Relevant Work

Plaintiff argues that the ALJ improperly determined that she could return to her past relevant work as a greeter. (Doc. 7 at 7). Plaintiff says that she presented evidence that the greeter job does not exist in the same capacity as it had in the past and, as the job is performed now, Plaintiff could not do it. (*Id.* at 8 (citing Tr. 338)). Thus, Plaintiff argues, the ALJ's decision is not supported by substantial evidence because he failed to address the evidence or its persuasiveness. (*Id.* at 10). Plaintiff also says that this error is harmful because if she was found to be unable to return to past relevant work, then she would automatically be found to be disabled under the social security grids. (*Id.* (citing 20 C.F.R. 404 Subpt. P, Appendix 2, Rule 202.04)).

At step four of the sequential evaluation process, the ALJ determines if the claimant's impairments prevent her from doing her past relevant work. If she can perform past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(iv) and 416.920, (a)(iv). A claimant bears the burden of proof at step four. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). To satisfy the burden, a claimant must demonstrate both that she cannot perform her past relevant work as "actually performed" *and* as "generally required by employers throughout the national economy." *Duvall v. Comm'r of Soc. Sec.*, No. 2:19-CV-2346, 2020 WL 90750, at *4 (S.D. Ohio Jan. 8, 2020) (citing SSR 82–61)(emphasis added). The regulations define "past relevant work" as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). The regulations also offer the following guidance regarding the determination of whether a claimant is able to perform his or her past relevant work:

> Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements,

8

> published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2). If a claimant has the residual functioning capacity to do her past work, she is not disabled. When making this determination, the ALJ "will not consider a claimant's vocational factors of age, education, and work experience or whether [her] past relevant work exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(b)(3).

Here, the ALJ's determination that Plaintiff was able to perform her past relevant work is supported by substantial evidence. First, the ALJ crafted Plaintiff's RFC, finding that she can perform light work with limitations. (Tr. 23). Notably, the RFC is not challenged. Next, the ALJ identified Plaintiff's past relevant work, which includes work as a development director, poll worker training director, produce stocker, greeter, retail merchandiser, and director of training at a university. (Tr. 27). To understand Plaintiff's ability to perform past relevant work, the ALJ relied upon the testimony of a vocational expert ("the VE"). (Tr. 27–28, 58–63). The VE testified that the greeter position is classified as "light and unskilled . . . as generally performed and as performed." (Tr. 59). The Dictionary of Occupational Titles (DOT) code is 299.677-010[1] which corresponds to a "sales attendant" position. (*Id.*). The ALJ then asked the VE if an individual with the same age, educational background, work experience, and RFC as the Plaintiff could perform

---

[1] https://occupationalinfo.org/29/299677010.html

any of Plaintiff's past work.  (Tr. 60–61).  The VE testified that the greeter position could be performed.  (Tr. 61).  Finally, the ALJ asked the required question, is this testimony consistent with the DOT, *see Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009), to which the VE answered yes, (Tr. 63).  So, the ALJ could, and did, rely on this testimony as substantial evidence. *Turner v. Comm'r of Soc. Sec.*, No. 2:19-CV-900, 2019 WL 5781608, at *5 (S.D. Ohio Nov. 5, 2019), *report and recommendation adopted*, No. 2:19-CV-900, 2020 WL 132269 (S.D. Ohio Jan. 13, 2020) ("[W]here an ALJ inquires whether the VE's testimony is consistent with the DOT and is given an affirmative response, the ALJ has met his or her obligation under SSR 00–4p, and there is no error relying on the positions the VE offered. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 858 (6th Cir. 2010).").  Ultimately, the ALJ concluded that Plaintiff was "able to perform her past work as a greeter, as the job was generally and actually performed."  (Tr. 28).  Thus, the Undersigned concludes the ALJ's determination is supported by substantial evidence.

To challenge this conclusion, Plaintiff relies upon evidence, an NPR article (Tr. 339–42), that she submitted after the administrative hearing.  (Doc. 7 at 8).  Plaintiff asserts that the article undermines the VE's testimony that a hypothetical individual with Plaintiff's RFC and other characteristics could perform her past relevant work.  (Tr. 338).  At base, Plaintiff is challenging the VE's testimony.  But this argument has been waived because Plaintiff failed to raise it while cross-examining the VE at the hearing.  The ALJ, in denying a supplemental hearing, stated that the article is dated February 25, 2019, and appeared to be printed on May 17, 2019.  (Tr. 17).  Thus, Plaintiff and her counsel were aware of this article, aware the VE would testify at the hearing, and aware of this potential point of cross-examination prior to the hearing.  (*Id.*).

Plaintiff's failure to cross-examine the VE on this issue at the hearing is fatal to her challenge now.  *Turner v. Comm'r of Soc. Sec.*, No. 2:19-CV-900, 2019 WL 5781608, at *7 (S.D.

Ohio Nov. 5, 2019), *report and recommendation adopted*, No. 2:19-CV-900, 2020 WL 132269 (S.D. Ohio Jan. 13, 2020) ("Plaintiff's failure to raise this issue during the hearing precludes him from now asserting it as a basis for relief."); *see also Black v. Comm'r of Soc. Sec.*, No. 2:19-CV-4242, 2020 WL 1933579, at *3 (S.D. Ohio Apr. 22, 2020), *report and recommendation adopted sub nom. Black v. Comm'r of Soc. Sec.*, No. 2:19-CV-04242, 2020 WL 6440259 (S.D. Ohio Nov. 3, 2020) (stating that Plaintiff' failure to cross-examine the VE is not grounds for relief now); *Stevens v. Comm'r of Soc. Sec.*, No. 2:14-CV-2186, 2016 WL 692546, at *11 (S.D. Ohio Feb. 22, 2016) ("The Court of Appeals for the Sixth Circuit and many other courts have generally concluded that a plaintiff's failure to object to testimony offered by a vocational expert at the time of the administrative proceeding waives his or her right to raise such issues in the district court."). The obligation to investigate the VE's testimony rests with Plaintiff, who was represented by counsel at the hearing. Counsel's failure to probe the VE's testimony as it relates to Plaintiff's ability to do her past relevant work at the hearing cannot serve as grounds for relief now. *See Adams v. Saul*, No. CV 5:19-503-DCR, 2020 WL 4550897, at *6 (E.D. Ky. Aug. 6, 2020) (concluding that Plaintiff's attorney's failure to cross-examine the VE at the hearing waives the right to argue that point in district court).

Even if the ALJ should have considered this evidence, the error is harmless. Plaintiff argues she presented evidence that the greeter job at Walmart does not exist in the same capacity because Walmart is eliminating the position in 1,000 stores. (Tr. 340). Plaintiff seems to be saying that the job does not exist in significant numbers in the national economy. But Plaintiff confuses the inquiry at step four. When making a step-four determination, the ALJ does not ask "whether [Plaintiff's] past relevant work exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(b)(3); *Mosher v. Astrue*, No. CIV.A. 08-313-HRW, 2009 WL 2511944, at *3 (E.D. Ky.

11

Aug. 16, 2009) ("Nor was the ALJ required to determine whether Plaintiff's past relevant work exists in significant numbers in the national economy."); *James-Parker v. Comm'r of Soc. Sec.*, No. 1:11-CV-1236, 2013 WL 1150593, at *8 (W.D. Mich. Mar. 19, 2013) ("At step four of the sequential evaluation, the Commissioner is not required to demonstrate that a claimant's past relevant work exists in significant numbers in the national economy . . . ."). Instead, the relevant inquiry is whether Plaintiff can perform her past relevant work "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). Thus, to proceed past step four, Plaintiff must prove "an inability to return to [her] former *type* of work and not just to [her] former job." *Studaway v. Sec'y of Health & Hum. Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987) (emphasis added); *see also Clendening v. Commissioner of Social Security*, 482 F. App'x 93, 96 (6th Cir. 2012) ("[T]he relevant inquiry is whether he could still perform that type of work and not necessarily the specific job that he had in the past.").

Here, Plaintiff makes no argument that she cannot return to the *type* of work she performed previously, which the VE classified as a "sales attendant," DOT 299.677-010[2]. (Tr. 59). Plaintiff's myopic focus on her past work as a Walmart greeter "rests on the incorrect assumption that the burden is to show merely an inability to return to [her] old job." *Studaway*, 815 F.2d at 1076.

In sum, Plaintiff's allegation of error is meritless. She has waived her challenge to the VE's testimony, and even if she had not, her error misunderstands the inquiry at step four. The ALJ's reliance on the VE's testimony was permissible and establishes substantial evidence for the conclusion that Plaintiff can perform her past relevant work. (Tr. 28).

B.   **Separation of Powers**

Plaintiff also contends that remand is required because a statute that provided tenure

---

[2] The Undersigned notes that Plaintiff in her reply brief mistakenly alleges that the VE classified the job as a billposter, DOT 299.667-010. (Doc. 13 at 4).

12

protection to the former Commissioner of Social Security, Andrew Saul, violated the separation of powers doctrine, and therefore, the decision to deny her benefits was made by individuals who lacked a proper delegation of power to make benefits determination.  This contention lacks merit.

      1.    *Plaintiff's Constitutional Claim is Procedurally Improper*

As an initial matter, the claim is procedurally improper.  Plaintiff's Complaint does not include any Constitutional claims.  (Doc. 4.)  Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, however, that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although a complaint need not provide "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  At a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Id*.  Here, the United States Supreme Court case upon which Plaintiff bases her Constitutional claim was decided on June 20, 2020.  Yet Plaintiff gave no notice, let alone fair notice, of her Constitutional claim in her July 27, 2021 Complaint.  *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same).  For that reason, she failed to comply with Rule 8.

      2.    *Plaintiff's Constitutional Claim Lacks Merit*

But even if Plaintiff's Complaint was rule compliant, her Constitutional claim lacks substantive merit.  Removal of the Commissioner is governed by 42 U.S.C. § 902(a)(3) which provides that the Commissioner may only be removed from office "pursuant to a finding by the President of neglect of duty, malfeasance in office."  *Id*.  The parties agree that two recent United

States Supreme Court cases cast doubt on the constitutionality of that provision.

In *Seila Law LLC v. Consumer Financial Protection Bureau*, the Supreme Court held that a provision that allowed the president to remove the Director of the Consumer Financial Protection Bureau ("CFPB") only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers doctrine by insulating the director from removal by the President. 140 S.Ct. 2183, 2197 (2020). In *Collins v. Yellin*, decided one year later, the Supreme Court held that a provision limiting the President to removing the Director of the Federal Housing Finance Agency ("FHFA") only for cause similarly violated the separation of powers doctrine. 141 S.Ct. 1761, 1783 (2021) (holding that "*Seila Law* is all but dispositive"). Plaintiff asserts that like the Directors of the CFPB and the FHAA, the Commissioner of Social Security is a single officer at the head of an administrative agency, and therefore, §902(a)(3)'s attempt to impose any restraints on the President's power to remove the Commissioner also violates the separation of powers doctrine. (Doc. 7 at 11–12, 13 at 6). The Commissioner agrees. (Doc. 8 at 5) (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021)).

Plaintiff further asserts that because this removal provision is unconstitutional, any delegations of power by Former Commissioner Saul, including delegations of authority to ALJs or the Appeals Council who determined her benefits claims, were invalid. (Doc. 7 at 11). The Commissioner contends that Plaintiff's argument fails because the ALJ who determined Plaintiff's claim on September 30, 2020, held office on that date, not because of a delegation of authority from

Former Commissioner Saul, but because of a ratification of delegated authority in July 2018,[3] by Former Acting Commissioner Nancy Berryhill.  (Doc. 8 at 7).  And the Commissioner correctly notes that an Acting Commissioner is not subject to § 902(a)(3)'s removal provision, and therefore that provision's constitutionality, or lack thereof, is irrelevant.  *See Collins*, 141 S.Ct. at 1781 (because the FHFA removal restrictions only applied to the Director, "any constitutional defect in the provisions restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" from actions of the Acting Director who enjoyed no such removal protections); *Thomas E. v. Comm'r of Soc. Sec.*, C21-5107-BAT, 2021 WL 5415241, *5 (W.D. Wash. Nov. 19, 2021) (finding no constitutional injury where ALJ's appointment was ratified by Acting Director Berryhill who, as Acting Director, was not subject to the removal provision in § 902(a)(3)); *Alice T. v. Comm'r of Soc. Sec.*, 8:21CV14, 2021 WL 5302141, *18 (D. Neb. Nov. 15, 2021) (same); *Boger v. Kijakazi*, No. 1:20-cv-00331-KDB, 2021 WL 5023141, * 3 n.4 (W.D.N.C Oct. 28, 2021) ("Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the ALJ] was appointed by an Acting Commissioner of Social Security who could be removed from the office at the President's discretion.") (emphasis in original).

Nevertheless, Plaintiff asserts that the ALJ and the Appeals Council adjudicated her disability application pursuant to a delegation of authority from Former Director Saul.  (Doc. 7 at 12).  The Court need not resolve this factual dispute but finds instead that even if Former Director

---

[3] In *Lucia*, the Supreme Court found that the United States Security Exchange Commission (SEC) ALJs were "inferior officers" under the Appointments Clause, U.S. Const. art II, § 2, cl. 2, and therefore, had to be appointed by a President, a court, or the head of an agency instead of lower-level staff.  *Lucia v. S.E.C.*, 138 S.Ct. 2044, 2051 (2018). Although *Lucia* involved ALJs at the SEC, on July 16, 2018, Acting Commissioner Berryhill ratified the appointment of the Social Security Administration's ALJ's and administrative appeals judges who were previously appointed by lower-level staff in response to the ruling in *Lucia*.  See SSR 19-1p, 84 Fed Reg. 9582, (2019).

Saul appointed the ALJ and Appeals Council judges[4] who determined Plaintiff's benefits claim, the constitutionality of § 902(a)(3) would not warrant remand for several reasons.

First, even if the removal provision in § 902(a)(3) is unconstitutional, it would not have deprived Former Commissioner Saul of the ability to delegate power to others to decide Plaintiff's benefit claim because of the doctrine of severability. As the Supreme Court noted in *Seila Law*, "one section of a statute may be repugnant to the Constitution without rendering the whole act void." 140 S.Ct. 2208 (quoting *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900)). Indeed, even in the absence of a severability clause, when "confronting a constitutional flaw in a statute, [the Supreme Court tries] to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Id*. (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd*., 561 U.S. 477, 508 (2010)). For that reason, in *Seila Law*, the Supreme Court found that the unconstitutional removal provision was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the unconstitutional removal provision was stricken. 140 S.Ct. at 2209–10, 2245. Such is the case here. If the removal provision in § 902(a)(3) is stricken, the Social Security Administration would remain fully functional. *Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (finding that plaintiff's separation of powers claim failed, in part, because even if § 902(a)(3) was unconstitutional it was severable from the remainder of the statutes governing the Social Security Administration); *Shaun A. v. Comm'r of Soc. Sec.*, Case No. C21-

---

[4] The Undersigned does not accept Plaintiff's assertion in her Reply that the Commissioner waived any defense to her separation of power claim with regards to the Appeals Council by failing to address that claim in the Memorandum in Opposition. (Doc. 13 at 10–12). Plaintiff only cursorily mentioned the Appeals Council in her Statement of Errors (Doc. 7 at 12), and again, failed to provide the Commissioner with fair notice of her Constitutional claim in her Complaint (Doc. 4). In any event, the claim lacks merit with regard to the Appeals Council for the same reasons that the claim lacks merit with regard to the ALJ.

5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (same).

In addition, even if the removal provision in § 902(a)(3) is unconstitutional, that would not have automatically rendered Former Commissioner Saul's appointment invalid, and thus, it would not have automatically invalidated his actions, including delegating authority to make benefits determinations or ratifying such delegations. In *Collins*, the Supreme Court found the unconstitutional removal provision did not render the FHFA's appointments invalid, and thus did not automatically void the FHAF's actions under the Director. 141 S.Ct. 1787 ("Although the statute unconstitutionally limits the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [that were challenged on appeal] as void."). Accordingly, infirmities in removal provisions do not automatically void appointments or actions taken by properly appointed officials. *Alice A. v. Comm'r of Soc. Sec.*, 2021 WL 5514434, *6 (finding that '[t]he infirm *removal* provision does not render Commissioner Saul's *appointment* invalid, which in turn does not render the ALJ's disability determination void.") (emphasis in original); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (finding that the unconstitutional "removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner").

Instead, to obtain reversal of an agency decision, a plaintiff must show "compensable harm" flowing from an unconstitutional removal clause. *Collins*, 141 S.Ct. 1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff occurred due to the President's inability to remove a Director of the FHFA except for cause). Here, Plaintiff makes no such showing. Plaintiff asserts that her injuries flow from an illegitimate delegation of power, that

17

her harm involves "government actors exercising power which they did not lawfully possess," and that therefore, her harm should be presumed. (Doc. 13 at 17). In so doing, Plaintiff appears to conflate issues that might have presumably flowed from the unconstitutional *appointment* of Former Director Saul with a provision allowing for his unconstitutional *removal*. As explained above, however, appointments are not nullified by an unconstitutional removal provision. Nor are actions taken by a properly appointed official.

In short, Plaintiff has not pointed to a connection between any unconstitutional limit on Former Director Saul's removal and the ALJ's determination denying her benefits. *See also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir 2021) (finding that "there is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Nor is it likely that Plaintiff could do so, given that any particular ALJ or Appeals Council decision would not concern the President. *Cf. Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring) ("The SSA has a single head with for-cause removal protection . . . But . . . I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

For all these reasons, the Undersigned finds that Plaintiff's separation of powers claim lacks merit. Accordingly, the Undersigned does not reach the Commissioner's alternative arguments including harmless error, de facto officer, the rule of necessity, and other prudential considerations.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

V.     **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: February 16, 2022                                        /s/ Kimberly A. Jolson
                                                               KIMBERLY A. JOLSON
                                                               UNITED STATES MAGISTRATE JUDGE